## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GLORIA WAYNDEZ,

                Plaintiff,                  CASE NO. 04-60276

v.                                    HON. MARIANNE O. BATTANI

EATON CORPORATION,

                Defendant.

_____/

### OPINION AND ORDER GRANTING DEFENDANT'S
### <u>MOTION FOR SUMMARY JUDGMENT</u>

Before the Court is Defendant Eaton Corporation's Motion for Summary Judgment (Doc. No. 23) and Motion to Strike (Doc. No. 27).  The Court heard oral argument on September 13, 2006.  At the conclusion of the hearing, the Court took this matter under advisement.  For the reasons that follow, the Court **DENIES** Defendant's Motion to Strike and **GRANTS** Defendant's Motion for Summary Judgment.

## I. FACTS

Plaintiff, Gloria Wandyez began working for Defendant, Eaton Corp. ("Eaton"), on January 3, 2001, as Director of Business Development & Strategic Planning for Engine Air Management Operations ("EAMO").  As part of her job duties, Plaintiff evaluated outside opportunities such as joint ventures, merger and acquisitions, and prepared Eaton's business plan.  She also managed the Informaton Technology ("IT") department. Wandyez reported to the Vice President of EAMO, Larry Iwan.

1

In 2003, the management team generated lists of positions that could be eliminated as part of a planned reduction in force.  Iwan reviewed the lists and complied a final, recommended list.  As a result, eight positions were eliminated.  According to Iwan, he selected Plaintiff's position as part of a reduction in force ("RIF") because, prior to Wandyez's hiring, Eaton had functioned for two years without anyone in Plaintiff's position.  Consequently, her position was eliminated in August 2003.

According to Plaintiff, during her first year of employment, she witnessed and complained about a general atmosphere of discrimination against women.  She characterizes women at Eaton as "on the defensive because the male employees made it difficult for them to do their work.  Male employees were 'extremely negative' toward women and subjected women to 'extremely harsh treatment.'"  Pl.'s Ex. 1 at 122.  At her deposition, Plaintiff testified that men questioned why a female employee should return to work after maternity leave, (id. at 126), that she witnessed a female Vice President treated disrespectfully at a Leadership Conference (id. at 129-30), and that male employees bet on how long a female employee would last  (id. at 134-36).

Plaintiff also reported that an employee that reported to her received e-mails from another employee containing "incredibly negative comments about women," including that "you can't control women" and that a particular women was "out of control."  Id. at 140-41.  After sexual harassment training, male employees, based in Italy, complained  that they had nothing to talk about if they could not talk abut sex.  Id. 143-44.  Plaintiff asserts that at the 2002, company Christmas party, Iwan asked her and her husband "how they managed to both work and pass the kids between them."  Id. at 147-49.  Finally, Plaintiff asserts that she was continually asked why she was dressed up or wore a skirt.  Id. at 150.

2

After Plaintiff failed to complete the 2002 strategic plan, she asked the Director of Human Resources, Ed Strand, for feedback on her job performance.  Wandyez also raised the "good old boy network,"  Pl.'s Ex. 6 at 34, but admitted during her deposition that the conversation with Strand focused solely on how she could improve her performance.  Pl.'s Ex. 1 at 109.  After meeting with Plaintiff, Strand initiated a Leadership and Organizational Review, "LOR," in which several of Wandyez's peers provided evaluations of her performance.  During the LOR process, one of Wandyez's colleagues told Strand that Wandyez got and kept her job because of diversity. Pl's Ex. 6 at 43; Pl.'s Ex. 7.  Also, Ann Rundle, Manager of Strategic Planning and Marketing for Eaton, told Strand that "people were picking on" Plaintiff.  Rundle stated that  she had "been [through] the same thing with the guys in EAMO."  Pl.'s Ex. 6 at 62-64; Ex. 9.

Strand did have a conversation with Plaintiff in which she expressed her opinion that there was a need for more diversity training.  Neither Wandyez's request nor the comments of her coworkers prompted an investigation. Pl.'s Ex. 6 at 64.

After Plaintiff received her 2002, Performance Review, she told Joseph Massey, the Manager of Organizational Development for Eaton's automotive group, in a "casual conversation," that she was upset by her review and commented that she was concerned about the ability to get ahead as a woman in the organization.  Pl.'s Ex. 13 at 15. subsequently verified that Plaintiff was discussing her concerns about diversity with Lori Wild, the Human Resources Director.  Id. at 17.

Approximately four months prior to Plaintiff's termination, Iwan told his staff that there would be a reduction in force that included EAMO.  He asked his Directors, including Plaintiff, to generate a list of names for potential inclusion in the RIF.  Iwan terminated

3

Wandyez on August 23, 2006.  Plaintiff filed her Complaint asserting claims of sex discrimination and retaliation in violation of Title VII, 42 U.S.C. § 2000e et seq. and the Elliott-Larsen Civil Rights Act ("Elliott-Larsen"), MICH.COMP.LAWS § 37.2101.

## II.  STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).  "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court--that there is an absence of evidence to  support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue.  FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002).  "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict."  Anderson v.

4

Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted) (quoting Black's Law Dictionary 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence itself need not be the sort admissible at trial. Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000). However, the evidence must be more than the nonmovant's own pleadings and affidavits. Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001). The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for

the non-movant. Anderson, 477 U.S. at 252.

## III. ANALYSIS

Before considering the merits of the dispositive motion, the Court addresses Defendants' request to strike factual statements included in Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment as hearsay.[1] Accordingly, the Court examines the five contested statements. The first allegation is that an unidentified "woman engineer" told Plaintiff that she had not been treated fairly. Pl.'s Brief at 1. The second statement is that another female Eaton employee told Plaintiff her "male co-workers had bet on how long she would last." Id. at 2. The third statement references e-mails from an Eaton employee regarding a women who was difficult to control. Id. The fourth statement raises complaints made by male employees following sexual harassment training. Id. Finally, Defendant moves to strike statements allegedly make by Ann Rundle to Ed Strand. Id. at 2-3.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED.R.EVID. 801(C). The law is clear: hearsay evidence is not admissible for purposes of summary judgment. Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994).

In response, Plaintiff argues that the statements are not hearsay. Consequently, the Court considers whether the statements meet the definition or whether an exception to the hearsay rule applies.

According to Plaintiff, she is not offering the identified statements to show the truth

---

[1]Defendant also requested that the Court strike numerous exhibits as unauthenticated. It withdrew its objection to the documents at oral argument.

of the matter asserted. For example, the e-mails sent by another employee to a man Plaintiff supervised, that women are hard to control, is being offered to show animus by Eaton employees toward women. The other statements are offered for the same reason or to establish that Defendant knew about the animus and failed to take action. The Court therefore **DENIES** Defendant's motion and will considered the evidence to the extent it is relevant.

## III. ANALYSIS

### A. Discrimination

#### 1. Prima Facie Case

Title VII and Elliott-Larsen prohibit discrimination on the basis of sex in the workplace. In <u>Town v. Michigan Bell Telephone Co.</u>, 568 N.W.2d 64, 68 (Mich. 1997), the Michigan Supreme Court adopted the three-step analytical framework articulated in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973), for cases involving discriminatory conduct by an employer. Under an intentional discrimination theory of age discrimination, the plaintiff must show, by a preponderance of evidence, (1) membership in a protected class, (2) discharge from employment, (3) that she was qualified for the position, and (4) that she was treated differently than a nonprotected employee. <u>Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.</u>, 176 F.3d 921, 928 (6th Cir. 1999). In "reduction in force" cases, the fourth prong is modified so that the plaintiff must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." <u>Ercegovich v. Goodyear Tire & Rubber Co.</u>, 154 F.3d 344, 350 (6th Cir. 1998) (citing <u>Barnes v. GenCorp., Inc.</u>, 896 F.2d 1457,

1465 (6th Cir. 1990).

If the plaintiff establishes a prima facie case of gender discrimination, the burden of production shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment action. Ensley-Gaines v. Runyon, 100 F.3d 1220, 1224 (6th Cir. 1996). If the defendant provides a legitimate, non-discriminatory reason, the plaintiff must then produce evidence that the defendant's proffered reason is a pretext for discrimination. Id. To meet this burden, a plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions. Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1083 (6th Cir. 1994). "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit" a finding of unlawful discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

Plaintiff has no direct evidence of discrimination; however, it is undisputed that male employees were retained when she was terminated. Plaintiff relies on Defendant's own Adverse-Impact Report to show statistical evidence suggesting that the RIF did impact a protected category, sex. See Pl.'s Ex. 22, Reduction in Force Notebook (the "Notebook"). The Notebook references and reports on the disparate impact analysis and the "four-fifths rule."

> A selection rate for any race, sex, or ethnic group which is less than four-fifths (or eighty percent) of the rate for the group with the highest rate will generally be regarded by the Federal enforcement agencies as evidence of the adverse impact.

Id. The adverse impact ratio for females was not less than four-fifths or 80%. Accordingly, the Court finds that Plaintiff has satisfied her prima facie case. Because Defendant

8

advanced a legitimate nondiscriminatory reason for her termination, Plaintiff bears the burden to show a genuine issue of material fact as to whether the reason was pretextual.

## 2. Pretext

The Sixth Circuit has identified three means of challenging the credibility of an employer's explanation. Manzer, 29 F.3d at 1083. The plaintiff can show "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." Id. (quoting McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993). Plaintiff does not advance an argument under the first or third prongs; she does not contest the need for a reduction in force or that a reduction in force actually occurred. She does however, challenge Defendant's characterization of her position as newly created. The Court finds the difference in the parties' characterization immaterial. It is uncontested that Iwan's decision to reduce the number of employees in his division was due to the business environment. It is undisputed that Iwan identified positions that could be eliminated for at least 18 months. Because Eaton had functioned for at least two years without anyone in Plaintiff's position Iwan believed it could do so again. Noticeably missing from Plaintiff's case is evidence suggesting that Eaton had not functioned for at least two years without anyone in Plaintiff's job. Therefore, any dispute as to whether Plaintiff's position was "newly created" does not undermine the stated reason for elimination of the position.

Nevertheless, even in the absence of a viable challenge to the factual basis underlying the employer's proffered explanation or that such a basis could motivate termination, a plaintiff may reveal an employer's pretext by "showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant."

9

Manzer, 29 F.3d at 1083.

Plaintiff pursues this avenue to establish a genuine issue of material fact as to pretext.  First Plaintiff attempts to expose Iwan's gender bias.   Wandyez testified that at a company Christmas party, Iwan asked her and her husband how they worked and cared for their children.  The relevance of remarks, such as Iwan's, are judged not only by the influence the individual had in the termination decision, but also by the content. Ercegovich, 154 F.3d at 355.  In this case, Iwan testified that he alone selected Plaintiff's position for termination.  Therefore, any discriminatory comment attributed to him is highly relevant.  Nevertheless, his stray comment is of no real value to Plaintiff in meeting her burden because no inference of bias flows from this innocuous remark, which was made months before the RIF.

Nor is Plaintiff's burden met by her assertion that the "corporate culture" of discrimination against women constitutes circumstantial evidence of individualized discrimination.  See Ercegovich, 154 F.3d at 356.  She asserts that male employees were "extremely negative" toward women.  The Court notes at the outset that the claims made in Plaintiff's statement of facts which are clearly hearsay cannot be considered to have probative value supporting her claim of discrimination.  Further, the Court finds that the evidence presented does not rise to the level necessary to show a pervasive discriminatory culture at EAMO that would create a genuine issue of material fact that the asserted basis for the decision was pretextual.[2]

---

[2]The relevance of the hearsay comments is limited by the location of the employees whose remarks are referenced as well as the ambiguous nature of the remarks made.  For example, questioning a woman why she was wearing a skirt suggests a casual dress code was in place, not gender bias.  Likewise the assertion

Plaintiff claims that the male employees were given new positions in the organization.  The Reduction in Force Justification Sheet shows that Plaintiff's job duties were split among two subordinates after Plaintiff's position was eliminated.  Pl.'s Ex. 22.  This evidence underscores rather than undermines Defendant's explanation.  When a company undergoes a reduction in force, those employees remaining pick up extra job duties.  As further evidence, Plaintiff asserts that one man selected in the reduction in force was retained for two additional years.  Pl.'s Ex. 18 at 34.  The employee cannot be compared to Plaintiff, however, because he was located at the customer's business, and the customer asked that he stay on temporarily.  Accordingly, Plaintiff has not established that this employee was similarly situated, and his retention, standing alone, does not demonstrate pretext.

Likewise, Wandyez's contention that she was the only director ever terminated over the course of three RIFs fails to meet her burden inasmuch as Plaintiff has not provided evidence to the Court that any similarly situated male employee, selected for the RIF, was treated more favorably.  The additional evidence she cites, the deposition testimony of Joseph Palchak, provides fragmented information on personnel changes, but lacks the context necessary for the Court to assess the merits.  Specifically, it is unclear if the changes mentioned occurred during the RIF.  Evidence that male employees were hired after Plaintiff left and male employees were moved to different positions in the company suffers the same deficit.  Plaintiff does not provide the Court with a time frame in which these changes occurred or sufficient detail to ascertain whether the employees involved

that a woman was treated disrespectfully at a conference does not create an inference of discriminatory conduct.

were similarly situated to Plaintiff.  There is no means by which the Court can assess the relevance because these contentions are presented in a factual vacuum.

In sum, the Court finds Plaintiff's evidence of a corporate culture of discrimination is distinguishable from that offered in Ercegovich.  In Ercegovich, 154 F.3d at 356, the plaintiff demonstrated "numerous age-biased statements by several individuals occupying high positions."  For example a personnel manager stated he did not want any employee over 50 on his staff.  The Vice President of Retail Sales, who was in a position to "shape the attitudes, policies and decision of the decisionmakers" likewise made unambiguous statements about older employees.  Id.  Here, there is no evidence that Iwan's attitudes were shaped by upper level management holding a bias against women in the workplace. Comments made by employees reporting to Iwan cannot be imputed to Iwan in the termination decision.  Nor do such comments create an inference of a discriminatory state of mind.  Therefore, Plaintiff has failed to show that the elimination of her position was mere pretext for discrimination.

## B.  Retaliation

Section § 2000e-3(a) forbids

> an employer to discriminate against any of his employ-
> ees. . . because [the employee] has opposed any practice
> made an unlawful employment practice by this subchapter,
> or because [the employee] has made a charge, testified,
> assisted, or participated in any manner in an investigation,
> proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in protected activity; (2) the employer had knowledge of her exercise

of her protected rights; (3) she suffered an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. Wade v. Knoxville Utils. Bd., 259 F.3d 452, 463 (6th Cir. 2001). Elliott-Larsen requires a plaintiff to demonstrate that: (1) she opposed violations of the Act or participated in an activity protected by the Act; and (2) her opposition or participation was a "significant factor" in the adverse employment action. Moore v. KUKA Welding Sys., 171 F.3d 1073, 1080 (6th Cir. 1999).

Although the burden of establishing a *prima facie* case of retaliation is "not onerous," EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997), Wandyez has failed to meet it. First, Plaintiff cannot show that she engaged in a protected activity for purposes of Title VII. Second Plaintiff cannot show a causal connection.

### 1. Protected activity

Plaintiff did not file a charge of discrimination with the EEOC until after her termination. She relies on her opposition to the lack of diversity training in the workplace to support her claim.

The issue is whether Plaintiff opposed a practice made unlawful by Title VII. The court in Holden v. Owens-Illinois, Inc., 793 F.2d 745, 748-49 (6th Cir. 1986), concluded that aggressive and zealous efforts to implement an affirmative action plan does not constitute opposition to any practice made unlawful by Title VII. In reaching its decision, the Holden court noted that the statute does not require employers to have affirmative action plans, and that Section 703(j), 42 U.S.C. § 2000e-2(j), expressly provides that nothing in the statute " 'shall be interpreted to require any employer ... to grant preferential treatment to any individual or to any group because of the race, color, religion, sex, or

13

national origin of such individual or group."  Id.

Plaintiff asserts that she did more than express concern about diversity training.  She argues that she made repeated complaints to Defendant that gender discrimination impeded her job performance and created a hostile environment to woman.  The record does not substantiate the evolution of Plaintiff's position that she protested acts of discrimination.  Her deposition testimony reflects the nature of her activity; as Wandyez herself put it:  "So the question is, is it because I'm pushing for diversity training that I'm pushed out the door?"  Pl.'s Ex. 1 at 146.  The recharacterization of her activity in response to Defendant's motion is not supported by the record.

Further, although Plaintiff did reveal to several people that she believed her gender created career problems, the relevance of her comments are impacted not only by their timing relative to the reduction in force but also by  the context in which the statements were made.  The statements were made friend to friend or confidentially to colleagues.  The statement made to Iwan, about the good old boy network, was not raised as a "complaint."  It is undisputed that Eaton's policy prohibits all forms of discrimination and harassment.  It is undisputed that Plaintiff was aware of the policy.  Finally, it is undisputed that Plaintiff never employed the complaint procedure despite her familiarity with it.

### 2.  Causal connection

Even if Plaintiff establishes that she engaged in protected activity, she cannot establish a causal connection between the protected activity and the adverse employment action.  To do so, she must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken in the absence of the protected activity.  Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).  Although no one

14

factor is dispositive in establishing a causal connection, evidence that the defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's protected activity is relevant to causation.  Id.  Temporal proximity alone is insufficient to establish a causal connection when there is compelling evidence to the contrary.  See Steiner v. Henderson, 121 Fed. Appx. 622, 626 (6th Cir.2005).

The mere fact that Plaintiff's position was terminated in a RIF after she made numerous requests for diversity training does not establish a causal connection because Defendant has advanced an alternate, unrebutted causal explanation for the selection of Plaintiff's position.  According to Defendant, the company could do without Plaintiff's position for eighteen months.

Moreover, because Plaintiff requested diversity training be provided throughout her tenure at Eaton, she is not entitled to a inference based on temporal proximity.  This Court has no basis for finding the existence of a genuine issue of material fact as to a causal connection between Plaintiff's activity and the elimination of her position.  Similarly, there is no evidence suggesting Plaintiff's continual push for diversity training was a significant factor in Iwan's selection of her position for elimination.  Her retaliation claims fail as a matter of law.

**V. CONCLUSION**

For the reasons stated above, Defendant's Motion to Strike is **DENIED** and Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**


                                        s/Marianne O. Battani
                                         MARIANNE O. BATTANI
                                       UNITED STATES DISTRICT JUDGE

Date: January 22, 2007


## CERTIFICATE OF SERVICE

A copy of this Order was served upon counsel of record on this date by ordinary mail and/or electronic filing.

                                         s/Bernadette M. Thebolt
                                         DEPUTY CLERK

16